UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                Chapter 7

Robert Smallwood,                                          Case No. 20-42708-nhl

                         Debtor.
-----------------------------------------------------------X
Stanley Supply & Tool, Inc.,

                         Plaintiff,

v.                                                                    Adv. Pro. No. 20-01108-nhl

Robert Smallwood,

                         Defendant.
-----------------------------------------------------------X

<u>DECISION</u>

APPEARANCES:

Jonathan M. Cader, Esq.                Jeff Morgenstern, Esq.
Craig B. Sanders, Esq.                 One Old Country Road
Barshay Sanders, PLLC                  Suite 320
100 Garden City Plaza                  Carle Place, NY 11514
Suite 500                              Attorney for Defendant
Garden City, NY 11530
Attorney for Plaintiff

NANCY HERSHEY LORD
United States Bankruptcy Judge

This matter comes before the Court on the motion of the plaintiff, Stanley Supply & Tool, Inc. (the "Plaintiff"), for summary judgment against Robert Smallwood ("Smallwood") excepting the debt owed to Plaintiff from Smallwood's discharge pursuant to 11 U.S.C. § 523(a)(4) and (a)(6).[1]  Smallwood opposes the motion.  For the following reasons, the Plaintiff's motion for summary judgment is granted in part and denied in part.

JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

BACKGROUND

Unless otherwise noted, the following facts are undisputed or are matters of which judicial notice may be taken.

In April 2008, the Plaintiff hired Smallwood as an employee for its retail operations in Long Island City, NY, and Smallwood eventually became the store manager.  (Pl. Statement of Undisputed Facts ¶ 6, ECF No. 10-15; Def. Counterstatement ¶ 6, ECF No. 16.)[2]  Concurrently, from April 21, 2008 through December 8, 2011, Smallwood was also a director, officer, and/or executive of a business known as Dynasty Flooring Supply, Inc ("Dynasty").  (Pl. Statement of Undisputed Facts ¶ 7, ECF No. 10-15; Def. Counterstatement ¶ 7, ECF No. 16.)  Smallwood was also a director, officer, and/or executive of a business known as Lightning Stainless Bolt

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11, U.S.C.
[2] Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 20-01108-NHL, identified by docket entry number.

1

Company ("Lightning"), which was incorporated in December 2011. (Pl. Statement of Undisputed Facts ¶ 8, ECF No. 10-15; Def. Counterstatement ¶ 8, ECF No. 16.)

On February 7, 2012, the Plaintiff commenced an action (the "State Court Action") against Smallwood, Dynasty, and Lightning (together, the "State Court Defendants") in the Supreme Court of the State of New York, Queens County (the "State Court"), alleging, *inter alia*, that Smallwood stole in excess of $50,000 in cash and in excess of $300,000 in inventory or merchandise from the Plaintiff. (Pl. Statement of Undisputed Facts ¶ 41, ECF No. 10-15; Def. Counterstatement ¶ 41, ECF No. 16; Cader Decl. Ex. 1 ¶¶ 15-28, ECF No. 10-2.) The Plaintiff alleged that Smallwood, through Dynasty and/or Lightning, sold the stolen merchandise at below market prices to third parties, including some of the Plaintiff's existing customers. (Cader Decl. Ex. 1 ¶¶ 18, 20, 22, 24, 27, 28, 32, 37, ECF No. 10-2.) The Plaintiff asserted claims of (1) conversion, (2) unjust enrichment, (3) tortious interference with prospective business relationships, (4) unfair competition, and (5) misappropriation of trade secrets. (Cader Decl. Ex. 1, ECF No. 10-2.) The Plaintiff sought an award of compensatory damages, punitive damages, and attorney's fees. (Cader Decl. Ex. 1, ECF No. 10-2.)

On March 12, 2012, the State Court Defendants filed an answer in the State Court Action. (Pl. Statement of Undisputed Facts ¶ 42, ECF No. 10-15; Def. Counterstatement ¶ 42, ECF No. 16; Cader Decl. Ex. 2, ECF No. 10-3.) Thereafter, the State Court Defendants refused to comply with discovery, asserting the Fifth Amendment right against self-incrimination. (Pl. Statement of Undisputed Facts ¶¶ 43, 44, ECF No. 10-15; Def. Counterstatement ¶¶ 43, 44, ECF No. 16; Cader Decl. Ex. 3 ¶¶ 2, 3, 5, ECF No. 10-4.) The Plaintiff filed a motion to compel discovery, which was opposed by the State Court Defendants. (Pl. Statement of Undisputed Facts ¶¶ 43, 44, ECF No. 10-15; Def. Counterstatement ¶¶ 43, 44, ECF No. 16.)

On December 24, 2012, the State Court issued an order granting the Plaintiff's motion to compel (the "Discovery Order"), ruling that it could not sustain Smallwood's "blanket invocation of the privilege against self-incrimination," and noting that Dynasty and Lightning cannot invoke the Fifth Amendment privilege.  (Pl. Statement of Undisputed Facts ¶ 45, ECF No. 10-15; Def. Counterstatement ¶ 45, ECF No. 16; Cader Decl. Ex. 4, ECF No. 10-5.)  The Discovery Order directed the State Court Defendants to respond to the discovery requests within 30 days.  (Cader Decl. Ex. 4, ECF No. 10-5.)

After the State Court Defendants failed to comply with the Discovery Order, the Plaintiff filed and served a motion for contempt and/or for sanctions, requesting that the State Court strike the answer filed by the State Court Defendants, and enter a default judgment.  (Pl. Statement of Undisputed Facts ¶¶ 46, 47, ECF No. 10-15; Def. Counterstatement ¶¶ 46, 47, ECF No. 16; Cader Decl. Ex. 5, ECF No. 10-6.)  The State Court Defendants did not oppose the motion.  (Pl. Statement of Undisputed Facts ¶ 48, ECF No. 10-15; Def. Counterstatement ¶ 48, ECF No. 16.)

On September 9, 2013, the State Court granted the Plaintiff's motion and struck the answer filed by the State Court Defendants based upon their failure to comply with the Discovery Order.  (Pl. Statement of Undisputed Facts ¶ 49, ECF No. 10-15; Def. Counterstatement ¶ 49, ECF No. 16; Cader Decl. Ex. 6, ECF No. 10-8.)  Thereafter, an inquest was held on April 7, 2015.  (Pl. Statement of Undisputed Facts ¶ 53, ECF No. 10-15; Def. Counterstatement ¶ 53, ECF No. 16; Cader Decl. Ex. 9, ECF No. 10-11; Smallwood Aff. Ex. B, ECF No. 17-2.)  Based upon the record established at the inquest, the State Court awarded the Plaintiff: (1) $824,244.12 for conversion; (2) $1 million for "tortious environment [sic] with respect to business relationships, lost profits, and lost business opportunities"; and (3) punitive damages of $424,792.62 "as relates to attorney's fees."  (Cader Decl. Ex. 9, ECF No. 10-11;

Smallwood Aff. Ex. B, ECF No. 17-2.)  Accordingly, on April 27, 2015, the State Court entered

judgment against the State Court Defendants in the amount of $2,249,036.74, with interest from

April 21, 2008, in the amount of $1,152,422.49 plus costs and disbursements in the amount of

$1,315.00, for a total of $3,402,774.23 (the "State Court Judgment").  (Pl. Statement of

Undisputed Facts ¶ 54, ECF No. 10-15; Def. Counterstatement ¶ 54, ECF No. 16; Cader Decl.

Ex. 10, ECF No. 10-12.)

On July 22, 2020, Smallwood filed a voluntary petition under chapter 7 of the

Bankruptcy Code.  Thereafter, on September 24, 2020, the Plaintiff commenced this adversary

proceeding seeking to except the State Court Judgment from discharge pursuant to § 523(a)(4),

as a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

larceny," and pursuant to § 523(a)(6), as a debt "for willful and malicious injury."

On January 21, 2021, the Plaintiff filed this motion for summary judgment, which is

opposed by Smallwood.  Hearings were held on February 24, 2021 and May 13, 2021.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy

Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986). A

court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

<u>Kulak v. City of New York</u>, 88 F.3d 63, 70 (2d Cir. 1996) (quoting <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 251–52 (1986)).  In ruling on a motion for summary judgment, a court looks

to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any," <u>Celotex</u>, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the

evidence in the light most favorable to the non-moving party, with all inferences drawn in that

party's favor, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587–88 (1986)

(quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>Marvel Characters, Inc. v.</u>

<u>Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002).

     While the initial burden is on the movant to demonstrate the absence of a genuine dispute

of material fact with particular citations to the record, <u>Celotex</u>, 477 U.S. at 323; <u>Marvel</u>, 310 F.3d

at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some

of these facts, <u>see</u> <u>Kulak</u>, 88 F.3d at 71.  Rather, the non-moving party must point to disputed

facts that would affect the outcome of the case such that a reasonable trier of fact could find in

favor of that party.  <u>Anderson</u>, 477 U.S. at 247–48.

<u>DISCUSSION</u>

     "A primary 'objective of the bankruptcy law is to afford a deserving debtor an economic

rehabilitation or "fresh start" in life.'"  <u>Suparo Int'l Inc. v. Kedia (In re Kedia)</u>, 607 B.R. 101,

108 (Bankr. E.D.N.Y. 2019) (quoting <u>First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein)</u>,

168 B.R. 23, 27 (Bankr. E.D.N.Y. 1994)).  However, this objective is "tempered by an equally

important objective and that is to prevent the 'dishonest debtor's attempt to use the law's

protection to shield his or her wrongdoing.'"  <u>Id.</u> (quoting <u>Bodenstein</u>, 168 B.R. at 27).

     The Plaintiff argues that it is entitled to summary judgment under the doctrine of

collateral estoppel because the State Court Judgment, and the record upon which it is based,

including the allegations in the complaint that are deemed admitted upon default, satisfy the

5

elements of § 523(a)(4) and (a)(6).[3]  The Plaintiff also argues that the Court may draw an

adverse inference against Smallwood as a result of his invocation of the Fifth Amendment to find

that Smallwood's actions were willful and malicious under § 523(a)(6).

Smallwood argues that summary judgment must be denied for a number of reasons.

While conceding that the State Court Judgment is binding with respect to the amount of

Smallwood's liability to the Plaintiff, Smallwood contends that the State Court Judgment is not

entitled to collateral estoppel effect with respect to dischargeability because it lacks necessary

findings of fact, and therefore cannot satisfy the elements of § 523(a)(4) or (a)(6).  Next,

Smallwood asserts that the determination regarding nondischargeability is solely within this

Court's jurisdiction.  Lastly, Smallwood argues that his invocation of the Fifth Amendment in

State Court cannot give rise to an adverse inference in this proceeding.

I.  Collateral Estoppel

A threshold question in this matter is whether the State Court Judgment, issued by

default, may be given collateral estoppel effect.  If preclusive effect cannot attach, summary

judgment must be denied.

It is well-settled that a prior adjudication may have preclusive effect in a subsequent

dischargeability proceeding if the elements of the claim(s) in the prior proceeding are identical to

the elements of § 523(a).  Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); Evans v. Ottimo,

469 F.3d 278, 281 (2d Cir. 2006).  Further, a bankruptcy court is required to give a state court

default judgment the same preclusive effect as would be given by that state's courts.  Kelleran v.

Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987).

---

[3] The Plaintiff's reply memorandum refers to § 523(a)(2)(A), but that appears to be an error.  See Pl. Reply at 1, ECF No. 18.  The Complaint in this adversary proceeding did not assert a claim under that § 523(a)(2)(A), and the arguments in the Plaintiff's memoranda on this motion assert arguments only with respect to § 523(a)(4) and (a)(6).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." Evans, 469 F.3d at 281. "Generally, under New York law, 'collateral estoppel effect will only be given to matters actually litigated and determined in a prior action . . . .'" Id. at 282 (quoting Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456 (1985)). "[F]or a question to have been actually litigated . . . it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (quoting D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 667 (1990)). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." Evans, 469 F.3d at 281–82 (quoting Kaufman, 65 N.Y.2d at 456)).

Collateral estoppel "is a doctrine intended to reduce litigation and conserve the resources of the court and litigants and it is based upon the general notion that it is not fair to permit a party to relitigate an issue that has already been decided against it." Kaufman, 65 N.Y.2d at 455. "In assessing these requirements, however, a court must be mindful that '[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results.'" Claridge Assocs., LLC v. Schepis, No. 15 CIV. 4514 (KPF), 2020 WL 6505210, at *6 (S.D.N.Y. Nov. 5, 2020) (alteration in original) (quoting Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1486 (2d Cir. 1995)).

New York law does not automatically exclude a default judgment from the application of collateral estoppel.  See Evans, 469 F.3d at 282.[4]  See also Parklex Assocs. v. Deutsch (In re Deutsch), 575 B.R. 590, 597–598 (Bankr. S.D.NY. 2017); Wu v. Lin (In re Lin), 576 B.R. 32, 49 (Bankr. E.D.N.Y. 2017) ("New York's collateral estoppel rule also accords preclusive effect to default judgments, under the appropriate circumstances.").  "[W]here an inquest on damages occurred in the state court, pursuant to New York law, such judgment is valid and enforceable—including the determination of damages—and is subject to preclusive effect in this Court." Deutsch, 575 B.R. at 598.

On the other hand, default judgments awarded by federal courts are generally not given collateral estoppel effect under federal preclusion law.  See Murphy v. Snyder (In re Snyder), 939 F.3d 92, 100 (2d Cir. 2019) ("The requirement that the underlying issue be 'actually litigated' generally bars a court from giving a default judgment preclusive effect.").  However, Snyder adopted an exception to that rule, holding that "where the default judgment is entered as a sanction for bad conduct, and the party being estopped had the opportunity to participate in the underlying litigation, the default judgment has preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding."  Snyder, 939 F.3d at 100.  The Second Circuit explained that such an exception is warranted because "[a]ffording a default judgment entered as a sanction preclusive effect furthers the goal of imposing the sanction in the first instance because it deprives the sanctioned party an opportunity to relitigate an issue that could and should have been decided in the first litigation."  Id. at 100–01.  "[T]he only reason that the first court did not have to assess the merits . . . is that the losing part[ies'] misconduct

---

[4] "Not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment." Curtis v. Ferrandina (In re Ferrandina), 533 B.R. 11, 24 n.14 (Bankr. E.D.N.Y. 2015) (citing Vyshedsky v. Soliman (In re Soliman), 515 B.R. 179, 185 (Bankr. S.D.N.Y. 2014)).  However, Evans is binding on this Court on matters of New York law.  Id.

forfeited [their] right to such an assessment." Id. at 101 (alterations in original) (quoting In re Corey, 583 F.3d 1249, 1253 (10th Cir. 2009)).

In this case, Smallwood filed an answer in the State Court Action, but, after notice and in the absence of objection, the answer was stricken by the State Court as a sanction for Smallwood's failure to comply with the State Court's Discovery Order.  Thereafter, following an inquest to quantify damages, the State Court entered the State Court Judgment.  Based upon these undisputed facts, it must be concluded that, under New York law, the State Court Judgment was entered after a full and fair opportunity to litigate the issues and, therefore, is entitled to preclusive effect with respect to any issue necessarily decided therein.  Evans, 469 F.3d at 282. Moreover, to the extent the Second Circuit's Snyder exception extends to state court default judgments, it would apply in this case.  Further, this Court notes that the First and Second Departments of the New York State Appellate Division have given preclusive effect to determinations when the party against whom preclusion was being sought willfully refused to litigate or comply with disclosure.  See, e.g., Miller v. Falco, 95 N.Y.S.3d 334, 336–37 (App. Div. 2d Dep't 2019) (collateral estoppel applied when a party failed to litigate); Kalinka v. Saint Francis Hosp., 827 N.Y.S.2d 75, 76-77 (App. Div. 2d Dep't 2006) (res judicata applied to dismissal of an action based upon an order of preclusion after finding that the party "had willfully and contumaciously failed to comply with disclosure"); In re Abady, 800 N.Y.S.2d 651, 660 (App. Div. 1st Dep't 2005) (stating that collateral estoppel may apply "where the party against whom collateral estoppel is sought to be invoked has appeared in the prior action or proceeding and has, by deliberate action, refused to defend or litigate the charge or allegation that is the subject of the preclusion request").  See also Claridge Assocs., 2020 WL 6505210, at *7 (collateral estoppel applied where defendants vigorously litigated the first phase of an

arbitration, decided not to participate in the second phase, and then sought to collaterally attack the arbitration proceeding); ACS Recovery Servs., Inc. v. Figueiredo, No. 07 Civ. 7359 (CLB) (LMS), 2008 WL 11517824, at *6 (S.D.N.Y. Jan. 15, 2008) ("[T]here . . . exists a robust minority rule employed by a number of New York courts that affords issue preclusive effect to default judgments in certain limited factual scenarios." (citing cases)).

Although Smallwood now contends that the failure to comply with the Discovery Order was based upon "a then good faith belief that such production violated defendant's Fifth Amendment privilege against self-incrimination," (Def. Counterstatement ¶ 46, ECF No. 16), the fact remains that Smallwood's answer was stricken as a sanction.  The inability of the State Court to determine the State Court Action on the merits lies squarely on Smallwood's shoulders. Applying collateral estoppel under these circumstances enforces the State Court's sanction and denies Smallwood an undeserved opportunity to relitigate issues already necessarily decided by the State Court.  See Viles v. Norton (In re Norton), Case No.17-70855-AST, Adv. Pro. No. 17-08125-AST, 2020 WL 717411, at *5 (Bankr. E.D.N.Y. Jan. 15, 2020) (finding that an issue was "actually litigated" when the default judgment was entered as a result of the debtor's failure to comply with discovery requests and a court order).

Even if preclusive effect may be given to a default judgment under New York law, Smallwood, citing to Graham v. Billings (In re Billings), 94 B.R. 803 (Bankr. E.D.N.Y. 1989), argues that a state court default judgment "does not have the preclusive effect of admitting the allegations in the complaint filed in the Bankruptcy Court, and does not serve as an adjudication as a judgment based on a trial on the merits."  (Def. Mem. of Law in Opp'n at 5, ECF No. 15.) In other words, Smallwood argues that the State Court Judgment, even if given preclusive effect, does not result in a determination that the debt is nondischargeable.

In <u>Billings</u>, Judge Feller stated that "where all the requirements of collateral estoppel are met, collateral estoppel properly precludes the relitigation of factual issues in subsequent dischargeability proceedings."  <u>Billings</u>, 94 B.R. at 808 (citing cases).  Judge Feller quoted the Sixth Circuit as follows:

> Applying collateral estoppel is logically consistent with the Supreme Court's decision in <u>Brown [v. Felsen</u>, 442 U.S. 127, 139 n. 10 (1979)] and the exclusive jurisdiction of the bankruptcy courts while at the same time encouraging judicial economy. The determination whether or not a certain debt is dischargeable is a legal conclusion based upon facts in the case. The bankruptcy court has the exclusive jurisdiction to make the legal conclusion. It must apply the statute to the facts and decide to discharge or not.... [and] that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts.

<u>Id.</u> (second alteration in original) (quoting <u>Spillman v. Harley</u>, 656 F.2d 224, 227 (6th Cir. 1981)).  Judge Feller ultimately rejected the plaintiff's argument that collateral estoppel should apply to the default judgment in that case because, among other things, it did not satisfy the requirement that the issue be actually litigated.  <u>Id.</u> at 809–810.

<u>Billings</u> is readily distinguishable from the instant case in two respects.  First, <u>Billings</u> involved a default judgment awarded by a federal court, and not a New York state court.  As discussed above, unlike the federal doctrine of collateral estoppel, New York's collateral estoppel doctrine applies to default judgments.  Second, the default judgment at issue in <u>Billings</u> was based upon the defendant's actual default and was not entered as a sanction.  Therefore, that default would not have fallen within the <u>Snyder</u> exception, had it existed at that time.  Moreover, consistent with <u>Billings</u>, this Court will make the ultimate determination whether the State Court Judgment is dischargeable after giving collateral estoppel effect to the findings entitled to such preclusive effect under applicable New York law.

Accordingly, because New York law applies collateral estoppel to default judgments, and because Smallwood's default was entered by the State Court as a sanction, this Court concludes that Smallwood was given a full and fair opportunity to litigate the State Court Action, satisfying that element of collateral estoppel.  However, the Court's inquiry does not end here; rather, the Court must next determine whether the issues necessarily determined by the State Court satisfy the elements of § 523(a)(4) and/or (a)(6).  See Indo-Med Commodities, Inc. v. Wisell (In re Wisell), 494 B.R. 23, 35 (Bankr. E.D.N.Y. 2011) ("In giving collateral estoppel effect to a pre-petition judgment in a non-dischargeability action, the bankruptcy court must be able, based upon the findings made in the pre-petition judgment, to make an independent determination that the elements of Section 523(a) have been satisfied.").

## II.  11 U.S.C. § 523(a)(4)

Section 523(a)(4) provides that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  The Plaintiff argues that Smallwood, as store manager, was acting in a fiduciary capacity when he stole money and inventory from the Plaintiff.  The Plaintiff further argues that, even if Smallwood was not a fiduciary of the Plaintiff, the State Court Judgment satisfies the embezzlement and/or larceny elements of § 523(a)(4).

At the outset, this Court must reject the Plaintiff's contention that Smallwood, as the Plaintiff's employee or store manager, was a fiduciary within the meaning of § 523(a)(4).  "A finding of nondischargeability for defalcation by a fiduciary requires a showing of '(i) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (ii) a defalcation committed by the debtor in the course of that relationship.'"  Mirarchi v. Nofer (In re Nofer), 514 B.R. 346, 353 (Bankr. E.D.N.Y. 2014) (quoting Grow Up Japan, Inc. v. Yoshida (In

re Yoshida), 435 B.R. 102, 108 (Bankr. E.D.N.Y. 2010)).  "The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made."  Id. (quoting Andy Warhol Found. v. Hayes (In re Hayes), 183 F.3d 162, 170 (2d Cir. 1999)).

The Bankruptcy Code does not define "fiduciary."  Nofer, 514 B.R. at 353 (first citing Hayes, 183 F.3d at 167; then citing Yoshida, 435 B.R. at 108).  "'The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)'; rather, the term's scope 'is a matter of federal law.'"  Id. (quoting Zohlman v. Zoldan, 226 B.R. 767, 772 (S.D.N.Y. 1998)).  "[I]t is well established that the fiduciary concept incorporated in § 523(a)(4) . . . is a narrow one, generally involving express trusts, technical trusts or statutorily imposed trusts; it does not extend to resultant trusts imposed by operation of law or equity."  Yoshida, 435 B.R. at 108 (citing cases).  Moreover, "no fiduciary relationship arises solely from an agency or employer-employee relationship." Yankowitz Law Firm, P.C. v. Tashlitsky (In re Tashlitsky), 492 B.R. 640, 646 (Bankr. E.D.N.Y. 2013) (citing cases).  See also White's Lumber v. Spies (In re Spies), No. 09-30283-MCR, 2011 WL 3295440, at *8 (Bankr. N.D.N.Y. July 29, 2011) (finding that the defendant "was merely an employee of [her husband's business]," and that "[h]er intimate knowledge of the business' finances, position as Office Manager and bookkeeper, and commitment to the success of her husband's business" did not make the defendant a fiduciary); Yoshida, 435 B.R. at 109 ("[A]n employment relationship alone does not give rise to a fiduciary relationship for purposes of § 523(a)(4).").  "Nor does the elevation of an employee to a managerial position bring into being a fiduciary relationship within the purview of § 523(a)(4)."  Yoshida, 435 B.R. at 109 (citing

cases).  Therefore, there is no question that Smallwood was not the Plaintiff's fiduciary for purposes of § 523(a)(4).

The remaining exceptions from discharge under § 523(a)(4) relate to embezzlement and larceny, which do not require the existence of a fiduciary relationship.  See Wisell, 494 B.R. at 40.  This Court previously addressed the elements needed to find embezzlement in Munoz v. Boyard (In re Boyard), 538 B.R. 645 (Bankr. E.D.N.Y. 2015) and Nofer, 514 B.R. 346.  "Embezzlement is defined as 'the fraudulent appropriation of property by a person to whom such property has been [entrusted], or into whose hands it has lawfully come.'"  Boyard, 538 B.R. at 654 (quoting Moore v. United States, 160 U.S. 268, 269 (1895) and Great Am. Ins. Co. v. Graziano (In re Graziano), 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983)).  See also Nofer, 514 B.R. at 356.  "Embezzlement requires a showing that '(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent.'"  Boyard, 538 B.R. at 654 (quoting Wisell, 494 B.R. at 40).  See also Nofer, 514 B.R. at 356.

Likewise, in Nofer, this Court defined larceny as "the fraudulent and wrongful taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner."  Nofer, 514 B.R. at 357 (alteration in original) (quoting Graziano, 35 B.R. at 594).  "In contrast to embezzlement, where the defendant initially holds rightful possession of the property, larceny requires a wrongful taking."  Id. (citing Moore, 160 U.S. at 269).  "To prove larceny, the plaintiff must show that the debtor 'wrongfully took property from the rightful owner with fraudulent intent to convert such property to [the debtor's] own use without the owner's consent.'"  Id. (quoting Dynamic Food Serv. Equip., Inc. v. Stern (In re Stern), 231 B.R. 25, 26 (Bankr. S.D.N.Y. 1999)).  Importantly, "[e]mbezzlement and

larceny both require the demonstration of fraudulent intent." Id. (citing Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990)).

Because the elements of larceny and embezzlement under § 523(a)(4) are not identical to the elements of conversion, summary judgment cannot be granted on collateral estoppel grounds with respect to the State Court's award for conversion.  Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403–04 (2d Cir. 2006) (alteration in original) (quoting Vigilant Ins. Co. of Am. v. Hous. Auth., 87 N.Y.2d 36, 44 (1995)).  "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." Bd. of Trustees, Adirondack Carpenters Pension Fund v. Parker (In re Parker), 388 B.R. 11, 22 (Bankr. N.D.N.Y. 2008) (quoting LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997)).  "Wrongful intent simply is not an element of an otherwise valid conversion claim." LoPresti, 126 F.3d at 42.

The State Court did not make a finding with respect to Smallwood's intent when it determined that Smallwood converted the Plaintiff's property, nor would any such finding be entitled to collateral estoppel effect because it is unnecessary for the adjudication of the Plaintiff's conversion claim.  See Evans, 469 F.3d at 281 ("[C]ollateral estoppel bars relitigation of an issue when . . . the identical issue necessarily was decided in the prior action . . . .").  Therefore, because the element of fraudulent intent under § 523(a)(4) is not satisfied by the State Court's determination, summary judgment cannot be granted on that claim.  See Wisell, 494 B.R. at 40–41 (concluding that a state court's finding that the defendant "engaged in 'deliberate wrongdoing,'" had "a 'fraudulent motive,' and that the circumstances were 'outrageous,'" were

insufficient to satisfy § 523(a)(4)'s element of fraudulent intent); <u>Parker</u>, 388 B.R. at 21–22; <u>Old Republic Nat'l Title Ins. Co. v. Moskowitz (In re Moskowitz)</u>, 310 B.R. 21, 29–30 (Bankr. E.D.N.Y. 2004) (denying summary judgment because the award for conversion does not satisfy the elements of embezzlement under § 523(a)(4)).

The Plaintiff argues that, notwithstanding the absence of a fraudulent intent element for conversion under New York law, summary judgment under § 523(a)(4) may nonetheless be granted with respect to the conversion award.  For support, the Plaintiff cites <u>Boyard</u> and <u>Nofer</u> and the declarations therein that "[a] partner or employee who diverts a corporation's funds for his or her own use commits embezzlement within the meaning of § 523(a)(4)."  <u>Boyard</u>, 538 B.R. at 654; <u>Nofer</u>, 514 B.R. at 356–57.  However, the Plaintiff's reliance on those cases is misplaced.  Nothing in <u>Boyard</u> or <u>Nofer</u> dispensed with the fraudulent intent element required under § 523(a)(4).  <u>See</u> <u>Boyard</u>, 538 B.R. at 655 ("As set forth throughout the Award, the [d]efendant's conduct and dealings with the [p]laintiff strongly imply a fraudulent intent."); <u>Nofer</u>, 514 B.R. at 357 ("Embezzlement and larceny both require the demonstration of fraudulent intent . . . .").  A judgment for conversion of the Plaintiff's property is simply insufficient, on its own, to warrant summary judgment under § 523(a)(4).

The Plaintiff further contends that the fraudulent intent element of § 523(a)(4) is satisfied by Smallwood's admissions in the State Court Action.  Since its complaint in the State Court Action alleged that Smallwood's "acts were wanton, intentional and malicious and intentionally designed to cause damage to [the Plaintiff]" (Cader Decl. Ex 1 ¶¶ 49, 54, ECF No. 10-2), and because, under New York law, a defaulting defendant "admits all traversable allegations in the complaint, including the basic allegation of liability," <u>Rokina Optical Co. v. Camera King</u>, 63

N.Y.2d 728, 729–30 (1984), the Plaintiff argues that Smallwood admitted the necessary fraudulent intent for granting summary judgment under § 523(a)(4).

This argument must be rejected for several reasons.  First, the complaint's allegations in the State Court Action of Smallwood's willful and malicious intent relate to the Plaintiff's claim under § 523(a)(6), not § 523(a)(4).  See Parker, 388 B.R. at 21–22 ("A debt arising from an unlawful conversion of property of another is not specified as nondischargeable in § 523(a) because typically a 'willful and malicious injury' under § 523(a)(6) would cover a 'willful and malicious conversion.'" (citing 4 L. King, Collier on Bankruptcy ¶ 523.12 [2], at 523–92.2 (15th ed. rev.1998)).

Second, the allegations that Smallwood acted wantonly, intentionally, and maliciously were asserted in the State Court Action with respect to the Plaintiff's request for punitive damages relative to the Plaintiff's conversion claim.  As previously stated, those allegations were unnecessary to the State Court's determination of conversion and, in any event, are different than the fraudulent intent required under § 523(a)(4).  See Wisell, 494 B.R. at 40–41.  The Plaintiff has not cited any case law where a bankruptcy court granted summary judgment based upon an allegation deemed admitted in a prior action when that allegation was unnecessary to the underlying claim.  Compare Norton, 2020 WL 717411 (relying upon allegations in the state court complaint where the elements of the state court action were "virtually identical" to the issues to be decided in the adversary proceeding); Deutsch, 575 B.R. at 602–03 (determining that the allegations in the state court complaint that were deemed admitted by the defaulting debtor, and which were necessary to the state law claims, satisfied the relevant provisions of § 523(a)).  Moreover, given the Second Circuit's position that "summary judgment is generally inappropriate where questions of intent and state of mind are implicated," Gelb v. Bd. of

Elections of the City of N.Y., 224 F.3d 149, 157 (2d Cir. 2000), this Court declines to grant summary judgment where the satisfaction of the necessary fraudulent intent element under § 523(a)(4) is based upon a deemed admission of allegations extraneous to the underlying claim of conversion.

Therefore, because embezzlement and larceny require fraudulent intent, while a claim for conversion under New York law does not, this Court cannot grant summary judgment to the Plaintiff under § 523(a)(4) with respect to the State Court's conversion award against Smallwood.  See Boyard, 538 B.R. at 653 ("A prior adjudication may have preclusive effect in a subsequent dischargeability proceeding if the elements of the claims in the prior proceeding are identical to the elements of § 523(a).").

Additionally, though not addressed in the Plaintiff's memoranda, this Court cannot grant summary judgment under § 523(a)(4) with respect to the State Court's award for tortious interference with business relationships, lost profits, and lost business opportunities because lost business opportunities do not constitute "property" for purposes of the embezzlement or larceny exceptions of § 523(a)(4).  See Tashlitsky, 492 B.R. 648–50 (dismissing a claim under § 523(a)(4) with respect to the debtor's alleged diversion of potential clients after extensive analysis as to whether business opportunities are subject to conversion).  But see Davidcraft v. Baer (In re Baer), 161 B.R. 334, 337–38 (Bankr. E.D.N.Y. 1993) (finding that a judgment for "tortious interference with existing and prospective business relationship, conversion, misappropriation of trade secrets, unfair competition, and conspiracy" was nondischargeable under § 523(a)(4)).[5]

---

[5] Baer did not address whether an existing or prospective business relationship was "property" subject to conversion, embezzlement, or larceny.

III.  11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity."  11 U.S.C. § 523(a)(6).  "The terms willful and malicious are separate elements, and both elements must be satisfied."  Salim v. VW Credit, Inc., 577 B.R. 615, 624 (E.D.N.Y. 2017) (quoting Soliman v. Vyshedsky (In re Soliman), 539 B.R. 692, 698 (Bankr. S.D.N.Y. 2015)).  The term "willful" means "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  "[R]ecklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  Id. at 64.  "Courts within the Second Circuit have found that if a debtor believes that an injury is substantially certain to result from his conduct, the debtor will be found to have possessed the requisite intent to injure required under Geiger."  Bd. of Trustees of Sheet Metal Workers Int'l Ass'n Loc. Union No. 28 Tr. Funds v. Kern (In re Kern), 567 B.R. 17, 36 (Bankr. E.D.N.Y. 2017) (citing Ferrandina, 533 B.R. at 26), aff'd, 618 B.R. 51 (E.D.N.Y. 2020).

Maliciousness, on the other hand, refers to an injurious act that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  Navistar v Fin. Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 87 (2d Cir. 1996).  Malice "will be found where the debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance."  Snyder, 939 F.3d at 105 (quoting Voyatzoglou v. Hambley (In re Hambley), 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005).  "Malice may be implied 'by the acts and conduct of the debtor in the context of [the] surrounding circumstances.'"  Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006)

(alteration in original) (quoting Stelluti, 94 F.3d 84, 88 (2d Cir. 1996)).  "Malice 'is implied

when anyone of reasonable intelligence knows that the act in question is contrary to commonly

accepted duties in the ordinary relationships among people, and injurious to another.'"  Hambley,

329 B.R. at 402 (quoting United Orient Bank v. Green, 215 B.R. 916, 928 (S.D.N.Y. 1997)).

"There is no doubt that an act of conversion, if willful and malicious, is an injury to

property within the scope of this exception."  Davis v. Aetna Acceptance Co., 293 U.S. 328, 332,

(1934).  See also Kern, 567 B.R. at 36 ( '"Willful and malicious conversion clearly falls within'

Section 523(a)(6).").  However, as discussed previously, the State Court was not required to

determine that Smallwood acted with wrongful intent when it adjudicated the Plaintiff's claim

for conversion.  It therefore follows that the State Court did not make a necessary determination

entitled to collateral estoppel effect upon which this Court can conclude that Smallwood's

conversion of the Plaintiff's property was willful and malicious for purposes of § 523(a)(6).

The Plaintiff urges this Court to draw a negative inference from Smallwood's invocation

of the Fifth Amendment privilege in the State Court Action to find that Smallwood acted

willfully and maliciously as required by § 523(a)(6).  Smallwood argues that such negative

inference is barred by the "separate proceeding doctrine."  Both parties' arguments are

unpersuasive.

At the outset, Smallwood's reliance on the "separate proceeding doctrine" is misplaced.

That doctrine provides that a party's invocation of the Fifth Amendment privilege, or a waiver of

that privilege, does not carry over to another proceeding.  See United States v. Miranti, 253 F.2d

135, 139 (2d Cir. 1958) ("[I]t is well established that a waiver of the privilege in one proceeding

does not affect the rights of a witness or the accused in another independent proceeding."); Hill

v. Klee, No. 1:16-CV-408, 2017 WL 6947806, at *11 (W.D. Mich. Dec. 15, 2017), report and

recommendation adopted, No. 1:16-CV-408, 2018 WL 439010 (W.D. Mich. Jan. 16, 2018); United States v. Steffen, 103 F. Supp. 415, 417 (N.D. Cal. 1951). While this doctrine may afford Smallwood the right to invoke or waive the Fifth Amendment in this proceeding after having invoked it in the State Court Action, nothing in the cases cited by Smallwood restricts a court's ability to draw a negative inference against a party based upon his invocation of the Fifth Amendment in a prior action.

Nonetheless, assuming, without concluding, that this Court could draw a negative inference against Smallwood, it will not do so at this juncture. Drawing an "adverse inference is in tension with the inference the Court must draw, as a matter of law, in favor of the nonmoving party in a summary judgment motion." Barnard v. Joffe (In re Inflight Newspapers, Inc.), 423 B.R. 6, 10 (Bankr. E.D.N.Y. 2010). "[P]rior to drawing an adverse inference against the party asserting the privilege, courts must examine whether undue prejudice exists." Id. at 17. "If the Court determines that an adverse inference may be drawn, the moving party must present additional evidence; it cannot rely solely on the adverse inference." Id. In this Circuit, some courts have drawn an adverse interest when deciding a motion for summary judgment, while others have not. Id. at 17–18 (citing cases).

This Court declines to draw a negative inference against Smallwood for purposes of finding that Smallwood's conversion of the Plaintiff's property was willful and malicious under § 523(a)(6). At the summary judgment stage, the Court is not acting as a finder of fact; rather, the Court must evaluate whether a genuine issue of material fact exists, after drawing all inferences in favor of the nonmoving party. See Matsushita, 475 U.S. at 587. Drawing such an inference at this time would unduly prejudice Smallwood by excepting a significant debt from discharge, which far outweighs any burden the Plaintiff would bear to litigate this claim on the

merits.  See Denton v. Hyman (In re Hyman), 502 F.3d 61, 66 (2d Cir. 2007) ("[I]n many instances, failure to achieve discharge can amount to a financial death sentence.").  Therefore, in the absence of a sufficient record upon which to find that there is no genuine issue of material fact with respect to the willful and malicious nature of Smallwood's conversion of the Plaintiff's property, the Plaintiff may not be awarded summary judgment under § 523(a)(6) on that debt.

However, the Court reaches a different conclusion with respect to the State Court's award for tortious interference with respect to business relationships, lost profits, and lost business opportunities.  "To prevail on a claim for tortious interference with business relations—also known as tortious interference with prospective economic advantage—under New York law, a plaintiff must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted) (quoting Catskill Dev., L.L.C. v. Park Place Ent. Corp., 547 F.3d 115, 132 (2d Cir. 2008).  See also Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) ("Under New York law, to state a claim for tortious interference with a prospective economic advantage or business relation, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003))).  The third element "sets a high bar," 16 Casa Duse, 791 F.3d at 262, in which the plaintiff must show, "as a general rule, [that] the defendant's conduct ...

amount[ed] to a crime or an independent tort," <u>Carvel Corp. v. Noonan</u>, 3 N.Y.3d 182, 190

(2004).

Smallwood argues that the record is devoid of any specific findings by the State Court

and, therefore, collateral estoppel cannot attach to the State Court's award for tortious

interference with business relations.[6]  Although it is true that, to give preclusive effect to a pre-

petition judgment, it has been stated that a "bankruptcy court must be able to identify clear and

specific findings in the pre-petition judgment which correlate to, and are decisive as to, the

elements to be proven in the Section 523(a) cause of action," <u>Wisell</u>, 494 B.R. at 35, this Court

cannot ignore the reality that clear and specific findings are often not included in default

judgments.  Adopting Smallwood's argument would effectively do an end run around New York

law that permits collateral estoppel effect to be given to default judgments.  Such a result is

unwarranted, especially in the context of a default judgment entered as a sanction, as was the

case in the State Court Action.

When a New York state court issues a default judgment, it is necessarily making findings

on the basic elements of such claim that were alleged in the complaint.  <u>See</u> <u>McGee v. Dunn</u>, 906

N.Y.S.2d 74, 75–76 (N.Y. App. Div. 2d Dep't 2010) ("There is no 'mandatory ministerial duty'

to enter a default judgment against a defaulting party. Instead, the court must determine whether

the motion was supported with 'enough facts to enable [the] court to determine that a viable

cause of action exists.'") (alteration in original) (first quoting <u>Resnick v. Lebovitz</u>, 813 N.Y.S.2d

480, 481 (App. Div. 2d Dep't 2006); then quoting <u>Woodson v. Mendon Leasing Corp.</u>, 100

N.Y.2d 62, 71 (2003)); <u>Green v. Dolphy Constr. Co.</u>, 590 N.Y.S.2d 238, 239 (App. Div. 2d

---

[6] Smallwood raised this argument in opposition to the application of collateral estoppel to the State Court's determinations on all claims, but, because this Court concluded that State Court's award for conversion does not satisfy the elements of § 523(a)(4) or (a)(6), the argument is only being addressed with respect to the award for tortious interference with business relations.

Dep't 1992) ("Where a valid cause of action is not stated, the party moving for judgment is not entitled to the requested relief, even on default.").  Therefore, in awarding the Plaintiff a default and damages for Smallwood's tortious interference with the Plaintiff's business relations, the State Court necessarily found the basic elements of that claim to be well-pleaded and otherwise supported.[7]  As such, the State Court's determination is entitled to collateral estoppel effect, and the Plaintiff is entitled to summary judgment, if the elements of tortious interference with business relations satisfy the elements of willful and malicious injury under § 523(a)(6).  See Norton, 2020 WL 717411 (state court default judgment was given preclusive effect for purposes of § 523(a)(2)); Deutsch, 575 B.R. 590 (state court default judgment was given preclusive effect for purposes of § 523(a)(2) and (a)(4)).

This Court concludes that the elements of tortious inference with business relations under New York law satisfies the willful and malicious injury elements of § 523(a)(6).  The Plaintiff's complaint alleged that Smallwood took the Plaintiff's merchandise and sold it to the Plaintiff's customers at below market rates.  When the State Court determined that the Plaintiff was entitled to an award of $1 million for tortious interference with respect to business relationships, lost profits, and lost business opportunities, it necessarily decided that Smallwood willfully injured the Plaintiff by interfering with its business relationships using malice or improper means.  The utilization of improper means, such as conversion, satisfies the malicious element of § 523(a)(6) because "anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." Hambley, 329 B.R. at 402 (quoting United Orient Bank, 215 B.R. at 928).  Therefore, the

---

[7] This Court notes that the State Court did not award damages on account of the Plaintiff's claims for unjust enrichment, unfair competition, or misappropriation of trade secrets.  (See Cader Decl. Ex. 9, ECF No. 10-11.)

Plaintiff is entitled to summary judgment excepting this $1 million debt from Smallwood's discharge pursuant to § 523(a)(6).[8]

## IV.  Attorney's fees

Lastly, the Court must address the final element of the State Court's award – attorney's fees.  The Plaintiff argues that the State Court's award of attorney's fees is nondischargeable pursuant to Cohen v. de la Cruz, 523 U.S. 213, 223 (1998).[9]  In that case, the Supreme Court held that "any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor" is nondischargeable under § 523(a)(2).  Cohen, 523 U.S. at 223.  Courts have interpreted this holding to apply to nondischargeable claims under § 523(a)(4) and (a)(6) as well.  Hambley, 329 B.R. at 403 (citing Adamo v. Scheller (In re Scheller), 265 B.R. 39, 55 (Bankr. S.D.N.Y. 2001)).

The State Court's award for attorney's fees was not apportioned between the conversion claim and the claim for tortious interference with business relations.  Therefore, because the Plaintiff is not entitled to summary judgment under § 523(a) with respect to the debt for conversion, this Court cannot determine at this time that the entire award for attorney's fees is nondischargeable, nor is there a sufficient record upon which to determine the amount of attorney's fees attributable to the Plaintiff's nondischargeable debt for tortious interference with business relations.

---

[8] This conclusion is not inconsistent with the determination that the Plaintiff is not entitled to summary judgment on its debt for conversion, which constituted the improper means used to interfere with the Plaintiff's business relations, because, as discussed above, the basic elements of conversion do not satisfy the elements of § 523(a)(6).
[9] Interestingly, the Plaintiff did not argue that the award of attorney's fees, which were awarded as punitive damages, are nondischargeable under § 523(a)(6).  Under New York law, "punitive damages are appropriate in cases involving "gross, wanton, or willful fraud, or other morally culpable conduct."  Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 509 (2d Cir. 1991).

<u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff's motion for summary judgment is granted with respect to the $1 million debt for tortious interference with business relations but is denied with respect to the debts for conversion and attorney's fees. As such, the dischargeability of the debts for conversion and attorney's fees shall be decided after a trial on the merits. A separate order will issue.



**Dated: September 28, 2021**
     **Brooklyn, New York**

               **Nancy Hershey Lord**
               **United States Bankruptcy Judge**